NOT DESIGNATED FOR PUBLICATION

No. 115,334

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOSHUA P. OLGA,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion on remand filed March 29, 2019. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON and BRUNS, JJ.

PER CURIAM: This case returns on remand from the Kansas Supreme Court. We previously affirmed the district court's summary dismissal of Joshua P. Olga's K.S.A. 60-1507 motion in *Olga v. State*, No. 115,334, 2017 WL 840296 (Kan. App. 2017) (unpublished opinion). Although we applied K.S.A. 60-1507(f)(2)(A)—as amended in 2016—in our previous opinion, the Kansas Supreme Court subsequently held in *White v. State*, 308 Kan. 491, 503, 421 P.3d 718 (2018), that the 2016 amendments to K.S.A. 60-1507(f) "do not apply retroactively to motions filed before July 1, 2016." Nevertheless, after applying the factors set forth in *Vontress v. State*, 299 Kan. 607, Syl. ¶ 8, 325 P.3d

1

1114 (2014), we continue to find that the district court's summary dismissal of Olga's K.S.A. 60-1507 motion should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On August 20, 2004, a jury convicted Olga of raping his then eight-year-old daughter and committing criminal sodomy against his then six-year-old son. He was subsequently sentenced to 370 months of imprisonment. The district court ordered this sentence to run consecutive to a sentence Olga received for a conviction of the voluntary manslaughter of his father. On appeal, Olga's convictions were affirmed by a panel of this court. *State v. Olga*, No. 93,464, 2006 WL 2043003 (Kan. App. 2006) (unpublished opinion). On December 19, 2006, the Kansas Supreme Court denied Olga's petition for review.

On January 24, 2007, Olga filed a pro se motion to correct illegal sentence in which he argued that the district court had erred in calculating his criminal history score. The district court ultimately denied the motion and a panel of this court affirmed. *State v. Olga*, No. 98,724, summary order filed December 4, 2007. On May 28, 2008, the Kansas Supreme Court denied Olga's petition for review.

The following month, Olga filed his first K.S.A. 60-1507 motion in which he made numerous claims of ineffective assistance of his trial counsel. The district court appointed counsel to represent Olga and held a preliminary hearing. After hearing the arguments presented by the parties, the district court found that the motion was untimely and denied it. On April 15, 2010, a panel of this court affirmed the district court's decision to deny Olga's first K.S.A. 60-1507 motion as being untimely filed. *Olga v. State*, No. 101,929, 2010 WL 1610408 (Kan. App. 2010) (unpublished opinion). On August 3, 2010, the Kansas Supreme Court denied Olga's petition for review.

2

On May 27, 2014, Olga filed a second K.S.A. 60-1507 motion, and supplemented it on June 29, 2014. Once again, Olga argued that his trial counsel was ineffective. On October 16, 2014, the district court summarily dismissed the K.S.A. 60-1507 motion. Olga then filed a motion for reconsideration on November 24, 2014. On January 12, 2015, the district court entered an order granting Olga's motion to reconsider and requesting the State to file a response to the K.S.A. 60-1507 motion. Ultimately, the district court issued a final order summarily denying Olga's K.S.A. 60-1507 motion. Following the summary denial of his motion, Olga filed another motion to reconsider, which the district court denied.

On appeal to this court, we concluded that the district court's summary dismissal of Olga's K.S.A. 60-1507 motion should be affirmed in an opinion entered on March 3, 2017. *Olga*, 2017 WL 840296 at *3. However, the Kansas Supreme Court granted a petition for review on October 12, 2017. Our Supreme Court subsequently vacated our decision and remanded this case to us for consideration in light of its holding in *White v. State*, 308 Kan. 491, Syl. ¶ 1.

ANALYSIS

On appeal, Olga contends that the district court erred in summarily dismissing his K.S.A. 60-1507 motion. In response, the State contends that Olga's motion is untimely and that it is not necessary to extend the filing deadline to prevent manifest injustice. Likewise, the State contends that Olga has not presented any exceptional circumstances justifying review of his successive motion. Based on an application of the *Vontress* factors rather than the statutory factors set forth in K.S.A. 60-1507(f)(2), we find that Olga's motion is untimely.

A defendant has one year from when a conviction becomes final to file a motion under K.S.A. 60-1507(f)(1). The one-year time limitation for bringing an action under

K.S.A. 60-1507 may be extended by the district court only to prevent a manifest injustice. K.S.A. 60-1507(f)(2). Manifest injustice must be determined from the totality of the circumstances. *Vontress*, 299 Kan. at 616. Here, it is undisputed that Olga filed his current K.S.A. 60-1507 many years after his conviction became final.

In determining whether manifest injustice exists in motions filed prior to July 1, 2016, the court should consider this nonexhaustive list of factors: (1) whether the movant provides persuasive reasons or circumstances that prevented him or her from filing the 60-1507 motion within the time limitation; (2) whether the merits of the movant's claims raise substantial issues of law or fact deserving the district court's consideration; and (3) whether the movant sets forth a colorable claim of actual innocence, i.e., factual, not legal, innocence. See *White v. State*, 308 Kan. 491, Syl. ¶¶ 1-2; *Vontress*, 299 Kan. 607, Syl. ¶ 8. We pause to note that in his brief submitted to this court, Olga identified and argued the *Vontress* factors. As such, we will now address his arguments.

Regarding the first *Vontress* factor, Olga argues that he received "inaccurate advice regarding time deadlines by the law library supervisor" at the prison in which he was incarcerated. He also complains that he had inadequate library time. However, our Supreme Court has found that "a pro se K.S.A. 60-1507 petitioner is in the same position as all other pro se civil litigants and is required to be aware of and follow the rules of procedure that apply to all civil litigants, pro se or represented by counsel." *Guillory v. State*, 285 Kan. 223, 229, 170 P.3d 403 (2007).

In addition, we do not find Olga's argument to be persuasive because the one-year time limitation is clearly expressed in K.S.A. 60-1507(f). In fact, Olga should have been well aware of the time limitation because of his previous 60-1507 motion that was dismissed for not being filed within one year following the issuing of the mandate in his direct appeal. Furthermore, by the time Olga allegedly contacted an attorney to file his second 60-1507 motion, the one-year limitation had long ago expired.

Turning to the second *Vontress* factor, Olga argues that his daughter initially said that nobody touched her private parts. He suggests that the initial intake worker should have been called as a witness on this point. However, Olga's defense was that his father molested the children and that they were somehow manipulated into saying that he was the one who did so. The record reflects that Olga shot and killed his father and pleaded guilty to voluntary manslaughter. In this case he claimed that he discovered his father was molesting the children and that is the reason he killed him.

The intake report and the intake worker's testimony is not particularly helpful to Olga in that it is inconsistent with his theory that his father molested the children. It is also important to note that this was not a forensic interview aimed at exploring suspected abuse. Rather, it was an answer to a routine question on the intake form. Also, according to the K.S.A. 60-1507 motion, although the intake worker asked his son if he had been beaten or physically abused, he was not asked about other types of inappropriate touching.

Olga also claims that the foster mother reported that the children were prone to tell lies. But this is an unsupported statement in the K.S.A. 60-1507 motion. He offers nothing more on this claim other than his unsupported allegation. Accordingly, we do not find that he has shown this to be a substantial issue of fact deserving of the district court's consideration.

Olga attached the affidavit of Cecil Henry who says he saw Olga's father inappropriately touching Olga's son while they sat on a couch. Although this would support the theory that Olga's father may have molested one or both children, it does not establish that Olga is innocent of also molesting the children. It also does not suggest why the children would name Olga as their abuser instead of their grandfather.

5

Furthermore, Olga attaches affidavits from two individuals who were evidently prepared to testify at trial that it would have been out of character and unbelievable to them that he would have molested his children. They characterized Olga as a concerned and caring parent. Although Olga also suggests in his motion that there were others who also could have testified in support of his character, he did not provide their affidavits in support of his motions. We do not find this allegation to be particularly helpful to Olga—much less substantial.

Additionally, Olga claims that his trial counsel should have investigated Evelyn Crawford as a potential witness. Crawford apparently took a report from Kristy Murphy who was reporting potential sexual abuse. The children were in state custody because Olga had been arrested for killing his father. It appears that Crawford received and documented reports from statutory reporters of child abuse. Olga does not explain in his motion what Crawford would have testified to at trial that would have been relevant or material. She never talked to the children and only took Murphy's report. Murphy testified at trial and it is not clear what Crawford could have possibly added that would constitute a substantial issue of law or fact.

Based on our review of the record on appeal, we do not find the merits of Olga's K.S.A. 60-1507 motion to raise substantial issues of law or fact deserving the district court's consideration. In addition, Olga does not show that any of these allegations were unknown to him either at the time of his direct appeal or, at the latest, by the time he filed his first K.S.A. 60-1507 motion. See Supreme Court Rule 183(c)(3) (2019 Kan. S. Ct. R. 228). We note that exceptional circumstances may allow a defendant to raise trial errors, including ineffective assistance of counsel, for the first time in a K.S.A. 60-1507 motion, but Olga has not shown exceptional circumstances here.

Finally, turning to the third *Vontress* factor, we do not find that Olga has made a colorable claim of actual innocence. In support of his claim of actual innocence, Olga

cites an affidavit of Cecil Henry who suggests that the children's grandfather may have inappropriately touched them. Even if we assume this to be true, the fact that the grandfather may have also inappropriately touched the children does not show that Olga was innocent. Also, although Olga claims that his father abused his sister and him, his sister testified at his sentencing hearing that she had a different father than Olga and that it was her father who had abused her. Thus, Olga has failed to show that it is more likely than not that no reasonable juror would have convicted Olga even if such evidence was presented.

Affirmed.